IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARISOL C. FORCINITO, | |
| Plaintiff, | Civil No. 12-6940 (JBS) |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | **OPINION** |
| Defendant. | |

APPEARANCES:

Philip Wolf, Esq.
WOLF & BROWN, LLC
228 Kings Highway East
Haddonfield, NJ 08033
      Attorney for Plaintiff Marisol C. Forcinito

Paul J. Fishman
UNITED STATES ATTORNEY
      By: Rebecca Hope Estelle
          Special Assistant U.S. Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278
      Attorney for Defendant Commissioner of Social Security

**SIMANDLE**, Chief Judge:

## I. Introduction

This matter comes before the Court pursuant to 42 U.S.C. § 405(g)[1]

for review of the final decision of the Commissioner of the Social

Security Administration denying Plaintiff Marisol Forcinito's

---

[1] The citations in this Opinion refer to the regulations in effect
when the ALJ adjudicated Plaintiff's claim.

application for disability insurance benefits under Title II of the
Social Security Act, 42 U.S.C. § 401, et seq. (the "Act").

Plaintiff argues that the Administrative Law Judge's ("ALJ")
finding regarding her residual functional capacity is not supported
by substantial evidence, and she seeks remand to the ALJ for further
consideration. Plaintiff also argues that the ALJ erred at step five
of the sequential analysis because the ALJ's hypothetical question
to the vocational expert did not include all of Plaintiff's
impairments and the vocational expert's testimony conflicted with
the Dictionary of Occupational Titles ("DOT").

As more fully discussed below, the Court will affirm the ALJ's
decision because it is supported by substantial evidence.

## II. Background

### A. Procedural History

Plaintiff filed an application for disability insurance benefits
on October 27, 2009, alleging an onset of disability on December 1,
2007. (Pl. Br. at 1.) The claim was denied, as was a request for
reconsideration. (Id.) A hearing was held on March 10, 2011 before
ALJ, Jonathan L. Wesner. (Id.) On June 9, 2011, the ALJ denied
Plaintiff's appeal at step five of the sequential analysis, finding
that Plaintiff was capable of performing jobs that existed in
significant numbers in the national economy. (R. at 31-32.) The
Appeals Council denied Plaintiff's request for review. (R. at 1-3.)

Plaintiff then filed the instant action.

**B. Medical History**

The following are facts relevant to the present motion. Plaintiff, who was 39 years-old when she applied for benefits, suffers from reflex sympathetic dystrophy ("RSD")[2] of the right leg and chronic back pain. (R. at 25.) Plaintiff has a history of right knee and right leg pain that began after surgery on her right knee in June 2000. (R. at 282.) At that time, Plaintiff was diagnosed with complex regional pain syndrome type 1. (Id.) Plaintiff's RSD symptoms include burning, swelling and spasms in her right leg. (R. at 43.) Plaintiff has been treated through a variety of pain management techniques and medications.

**1. Dr. Jalali**

Dr. Shailen Jalali has treated Plaintiff for over ten years through regular office visits. (Pl. Br. at 2.) Upon referral by Plaintiff's primary care physician, Plaintiff began seeing Dr.

---

[2] "RSDS/CRPS is a chronic pain syndrome most often resulting from trauma to a single extremity. It can also result from diseases, surgery, or injury affecting other parts of the body. Even a minor injury can trigger RSDS/CRPS. The most common acute clinical manifestations include complaints of intense pain and findings indicative of autonomic dysfunction at the site of the precipitating trauma. Later, spontaneously occurring pain may be associated with abnormalities in the affected region involving the skin, subcutaneous tissue, and bone. It is characteristic of this syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual." SSR 03-2P, 2003 WL 22399117, at *1 (S.S.A. Oct. 20, 2003).

Jalali, a pain management specialist, in June 2001. (R. at 282.) In 2001, Dr. Jalali administered a series of four lumbar sympathetic blocks and inserted a temporary lumbar epidural catheter for continuous infusions. (R. at 278-84.) In November 2002, Dr. Baralot implanted a spinal cord stimulator to reduce Plaintiff's pain. In addition to these procedures, Plaintiff has been prescribed a series of medications to manage her symptoms including Avinza, Neurontin, and Percocet. (R. at 285.)

According to Plaintiff's own reports, her pain has fluctuated over time. In May 2004, Plaintiff reported that the combination of the stimulator and pain medication reduced her pain 60 percent. (R. at 285.) She stated that her pain decreased from 7 out of 10 to 5 out of 10, 10 being the worst. (Id.) However, in October 2004, Plaintiff reported an increase in pain to 7 out of 10 and requested that the spinal cord stimulator be removed. (R. at 287.) In January 2005, Dr. Jalali re-programmed the stimulator to better cover the affected areas and Plaintiff reported pain relief of 50 percent with a pain level of 6 out of 10. (R. at 242.) Notes from visits to Dr. Jalali in May and August 2005 reflect continuing pain, particularly in the stimulator battery site, and on August 8, 2005, the spinal cord stimulator was removed. (R. at 236-41.) At the time, Dr. Jalali indicated that Plaintiff could perform light duty work with no heavy lifting. (R. at 236.) In October 2005, Plaintiff became pregnant and

certain medications were discontinued. (R. at 233.) Consequently, Plaintiff experienced "significantly elevated levels of pain" and her sleep worsened through February 2006, which Dr. Jalali attributed in part to bearing additional weight during her pregnancy. (R. at 231-32, 288.)

Plaintiff experienced a similar increase in pain during her second pregnancy when Dr. Jalali again reduced her pain medications. In January 2008, when Plaintiff was 20 weeks pregnant, she reported a 40 percent overall reduction in pain with her Avinza reduced from 90mg to 60mg and rated her pain as 8 out of 10. (R. at 291.) After giving birth, Dr. Jalali increased her Avinza and Plaintiff reported 40 percent pain relief and stated that the increase helped. (R. at 295.)

On May 27, 2009, Dr. Jalali implanted a percutaneous dual spinal cord stimulator. (R. at 267.) In July 2009, Plaintiff reported that her pain was much improved since her last visit with a 50 percent overall reduction in pain and an average rating between 5 and 7 out of 10. (R. at 308.) In November 2009, Plaintiff reported using the spinal cord stimulator 18-19 hours per day. (R. at 310.) In July 2010, Plaintiff reported that she was using the stimulator four to six hours per day resulting in a 40 percent reduction in pain. (R. at 328.) At that time, Plaintiff reported "locking" in her right knee, but x-rays showed no evidence of fracture or dislocation or other

abnormality. (R. at 338.)

In March 2011, Plaintiff reported a progressive increase in her pain, particularly where the spinal cord stimulator was implanted, and rated her pain at 8 or 9 out of 10. (R. at 335-36.) Dr. Jalali also noted significant spasms in the right paravertebral area. (Id.)

On April 29, 2011, Dr. Jalali completed a medical assessment form indicating that Plaintiff was unable to lift or carry any amount, but she could sit for a total of 15 minutes in an eight-hour workday and stand and/or walk for a total of 15 minutes in an eight-hour workday. (R. at 345-47.) Dr. Jalali noted that Plaintiff could never climb, balance, stoop, crouch, kneel, or crawl, she was unable to reach, handle, or perform fine manipulation for an extended period of time, and she was entirely unable to bend, push or pull. (Id.) Dr. Jalali attached to his assessment the occupational physical performance evaluation performed by Lisa Bitton, a registered occupational therapist to whom Dr. Jalali had referred Plaintiff, but provided no additional support or explanation for his opinions. (Id.)

In treatment notes, Dr. Jalali consistently states that Plaintiff did not appear to be in acute distress and displayed no obvious cognitive deficits. Further, X-rays performed on June 18, 2008 of Plaintiff's pelvis, thoracic spine and lumbar spine were unremarkable. (R. at 314-16.)

### 2. Dr. Khona

On January 7, 2010, Nithyashuba Khona, M.D., conducted a consultative examination at the request of the Social Security Administration. (R. at 261-62.) Plaintiff reported right leg pain, back pain, burning, spasms and discoloration of the skin and stated that she could not sit, walk or do housework. (R. at 261.) Plaintiff also reported that the stimulator did not help relieve her pain. (Id.) Dr. Khona conducted a physical examination and noted that Plaintiff had a normal gait without an assistive device, even though she used a cane, and required no assistance getting on and off the examination table. (R. at 262.) Dr. Khona determined that Plaintiff could perform a full squat, but had trouble walking on her heels and toes. (Id.) Dr. Khona stated that the examination was limited due to Plaintiff's inability to tolerate touch and due to pain. (Id.) Dr. Khona concluded that Plaintiff was limited for sitting and standing for a prolonged period of time, but she was able to care for her two young children. (Id.)

### 3. Dr. Cirillo

On February 16, 2010, Dr. Cirillo, a medical consultant for the New Jersey Division of Disability Determination, conducted a physical residual functional capacity assessment and observed that Plaintiff had difficulty walking heel to toe, experienced pain in her lower right leg upon touch, and had a limited range of motion in the lumbar

spine. (R. at 271.) Otherwise Plaintiff's examination was within normal limits. (Id.) Dr. Cirillo concluded that Plaintiff had the capacity to lift and carry up to ten pounds occasionally and less than ten pounds frequently, stand and/or walk at least two hours in an eight-hour workday, and sit for six hours in an eight-hour workday. (R. at 271-77.) Dr. Cirillo also stated that Plaintiff could never climb ladders, crawl or be exposed to heights or hazardous machinery; however, she could occasionally climb stairs, kneel, and push/pull with her right lower leg and only occasionally reach with her upper extremities. (Id.)

### 4. Lisa Bitton

On April 14, 2011, Lisa Bitton, a registered occupational therapist, conducted a 60-minute physical capacity test with Plaintiff. (R. at 343-44.) Bitton observed that Plaintiff was unable to lift or carry any amount of weight and she could sit for only five minutes in an eight-hour workday, stand for fifteen minutes in an eight-hour workday, and walk for five minutes in an eight-hour workday. (Id.) Bitton reported that Plaintiff was unable to use her hands for repetitive grasping and fine manipulation, she could occasionally push, but never pull, bend, squat, crawl, climb stairs or reach. (Id.) Bitton concluded that Plaintiff did not demonstrate sedentary work capacities necessary to work in a productive manner. (Id.)

**C. ALJ Decision**

In a written decision dated June 9, 2011, the ALJ determined that Plaintiff was not disabled from December 1, 2007 through the date of decision. (R. at 23.) He found Plaintiff had not engaged in substantial gainful activity since December 1, 2007, the alleged onset date, and concluded that she suffered from severe impairments, including "reflex sympathetic dystrophy (RSD) and chronic pain of the lumbar spine (20 CFR 404.1520(c))." (R. at 25.) The ALJ found that Plaintiff's combination of impairments did not meet or medically equal the severity of an impairment listed in the regulations, but he described her residual functional capacity ("RFC") as follows:

> the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that she can only lift and carry up to ten pounds occasionally and less than ten pounds frequently and she needs to change position (sit/stand) at will, to alleviate pain.

(R. at 29.) Importantly, the ALJ determined that "the claimant's statements concerning the intensity, persistence and limiting effects of [the alleged symptoms] are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. at 29.) The ALJ then discussed conflicts between Plaintiff's testimony, the Function Report completed by Plaintiff, and medical evidence in the record including Dr. Jalali's treatment notes and Dr. Khona's consultative exam. (R. at 29-30.) The ALJ also noted that he gave little weight to Bitton's assessment because it was not from

an "acceptable medical source." (R. at 30.)

After finding Plaintiff unable to perform any past relevant work and hearing testimony from Louis Szollosy, a vocational expert ("VE"), the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform. (R. at 30-31.) The VE stated that an individual of Plaintiff's age, education, and past relevant work, with the RFC determined by the ALJ and with the additional limitation that the individual have the option to sit or stand at will, could perform jobs as "table worker," "assembler," and "call out operative." (R. at 31.) Accordingly, the ALJ ruled that Plaintiff was not disabled from December 1, 2007 through the date of decision. (R. at 32.)

## III. Standard of Review

This Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g); Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). The Court's review is deferential to the Commissioner's decision, and the Court must uphold the Commissioner's factual findings where they are supported by "substantial evidence." 42 U.S.C. § 405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Cunningham v. Comm'r of Soc. Sec., Civ. 11–2633, 2012 WL 6200379, at *2 (3d Cir. Dec. 13, 2012). Substantial evidence is defined as "more than a mere scintilla," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v.

*Perales*, 402 U.S. 389, 400 (1971); *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012) (using the same language as *Richardson*). Therefore, if the ALJ's findings of fact are supported by substantial evidence, the reviewing court is bound by those findings, whether or not it would have made the same determination. *Fargnoli*, 247 F.3d at 38. The Court may not weigh the evidence or substitute its own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).

The ALJ must set out a specific factual basis for each finding. *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974). "When a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason. The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citations omitted). While a court should not "expect the ALJ to make reference to every relevant treatment note in a case," *Fargnoli*, 247 F.3d at 42, "[t]he ALJ's failure to address evidence in direct conflict with his/her findings . . . is erroneous." *Landeta v. Comm'r of Soc. Sec.*, 191 Fed. App'x 105, 110 (3d Cir. 2006).

## IV. Discussion

Plaintiff's primary argument is that the ALJ's findings as to Plaintiff's RFC are not supported by substantial evidence. Plaintiff

also contends that the hypothetical question posed to the VE failed to include all of Plaintiff's impairments and improperly included an option to sit/stand at will. Finally, Plaintiff argues that the VE's testimony conflicted with the DOT and the ALJ failed to obtain a reasonable explanation for the conflict. The Court will address each argument in turn.

## A. Plaintiff's Residual Functional Capacity

Plaintiff's argument that the ALJ's findings as to Plaintiff's RFC are not supported by substantial evidence consists of three parts. First, Plaintiff argues that the ALJ failed to give proper weight to the findings and opinion of Lisa Bitton and failed to provide adequate reasons for rejecting Bitton's opinion as to Plaintiff's RFC. Second, Plaintiff argues that the ALJ failed to give proper weight to the findings and opinion of Dr. Jalali. Third, Plaintiff argues that the ALJ failed to properly consider Plaintiff's subjective complaints of pain and other symptoms under SSR 96-7p.

### 1. Lisa Bitton

Plaintiff argues that the ALJ failed to give proper weight to Bitton's assessment of Plaintiff's RFC and failed to adequately explain his reason for rejecting her opinion.

The RFC assessment considers how limitations regarding claimant's physical abilities, mental abilities, and any other abilities affected by her impairments may affect the claimant's

ability to do work on a regular and continuing basis. 20 C.F.R. §
404.1545(b)-(d). The ALJ must consider all relevant medical and other
evidence when determining an individual's RFC and must consider
limitations imposed by all of an individual's impairments, even those
that are not "severe." § 404.1545(a)(2)-(3). Such evidence includes
medical records, lay evidence, effects of symptoms, including pain
that are reasonably attributed to a medically determinable
impairment, descriptions and observations of limitations by the
claimant and others. § 404.1545(a)(3).

Certain medical sources are considered "other sources," not
"acceptable medical sources," including nurse practitioners,
physician assistants, licensed clinical social workers,
naturopaths, chiropractors, audiologists, and therapists. SSR 06-
03p, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006). "[I]nformation
from such 'other sources' . . . may provide insight into the severity
of the impairment(s) and how it affects the individual's ability to
function," although it may not be used to establish the existence
of a medically determinable impairment. Id.

When considering evidence from medical sources who are not
"acceptable medical sources," the ALJ is to apply the factors for

weighing opinion evidence under 20 C.F.R. § 404.1527(d).[3] Id. at *4.

SSR 06-3P recognizes that

> [a]lthough there is a distinction between what an adjudicator
> must consider and what the adjudicator must explain in the
> disability determination or decision, the adjudicator
> generally should explain the weight given to opinions from these
> "other sources," or otherwise ensure that the discussion of the
> evidence in the determination or decision allows a claimant or
> subsequent reviewer to follow the adjudicator's reasoning, when
> such opinions may have an effect on the outcome of the case

Id. at *6.

Here, the ALJ stated, "I give little weight to Ms. Bitton's
assessment that the claimant does not have the residual functional
capacity for even sedentary work (see Exhibit 14F), as it is not from
an 'an acceptable medical source.'" (R. at 30.) The ALJ specifically
relied on SSR 06-3p and 20 C.F.R. 416.913(a).[4] (Id.) Plaintiff does
not argue that the ALJ's characterization of Bitton as an "other
source" was improper. Instead, Plaintiff argues that finding Bitton
not to be an "acceptable medical source" is an insufficient reason

---

[3] These factors include: "how long the source has known and how
frequently the source has seen the individual; how consistent the
opinion is with other evidence; the degree to which the source presents
relevant evidence to support an opinion; how well the source explains
the opinion; whether the source has a specialty or area of expertise
related to the individual's impairment(s); and any other factors that
tend to support or refute the opinion." Id. at *4-5.
[4] 20 C.F.R. § 416.913(a) defines "acceptable medical sources" as
licensed physicians (medical or osteopathic doctors), licensed or
certified psychologists, licensed optometrists, licensed
podiatrists, and qualified speech-language pathologists. 20 C.F.R.
§ 416.913(a).

to give "little weight" to her opinion. Further, Plaintiff contends the ALJ failed to explain what weight he gave Bitton's opinion.

   At the outset, the Court notes that it may not weigh the evidence or substitute its own conclusions for those of the ALJ. <u>Chandler v. Comm'r of Soc. Sec.</u>, 667 F.3d 356, 359 (3d Cir. 2011). To the extent Plaintiff challenges the adequacy of the ALJ's explanation of the weight given to Bitton's opinion, the Court finds no error. The ALJ properly characterized and treated Bitton as an "other source," not an "acceptable medical source." Further, the ALJ correctly observed that "only 'acceptable medical sources' can be considered treating sources . . . whose medical opinion may be entitled to controlling weight." SSR 06-03p, 2006 WL 2329939, at *2. SSR 06-3P explicitly states, "The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because . . . 'acceptable medical sources' are the most qualified health care professionals." <u>Id.</u> at *5. While "information from . . . 'other sources' . . . may provide insight into the severity of the impairment(s)," the ALJ appropriately exercised his discretion in affording Bitton's report "little weight."[5]

---

[5] Plaintiff notes that SSR 03-2P explains that "[i]nformation other than an individual's allegations and reports from the individual's

The ALJ thoroughly discussed the evidence in the record, including Bitton's report, and made clear that her assessment conflicted with the reports of state consultative physicians, Dr. Cirillo and Dr. Khona, as well as the treatment notes of Dr. Jalali, which he assigned greater weight. As such, the ALJ's discussion of the evidence sufficiently "allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." Id. at *6. Further, it is clear that the ALJ did give some weight to Bitton's opinion because he added the sit/stand restriction to Plaintiff's RFC. See Chandler, 667 F.3d at 362 (regarding ALJ's inclusion of additional restrictions to claimant's RFC as evidence that ALJ considered the opinion of other medical source). Therefore, the Court concludes that the ALJ did not err in affording Bitton's opinion "little weight" and provided an adequate explanation for the weight he assigned.

### 2. Dr. Jalali

Next, Plaintiff argues that the ALJ failed to give proper weight to the findings and opinion of Dr. Jalali, Plaintiff's treating

---

treating sources helps to assess an individual's ability to function on a day-to-day basis and helps to depict the individual's capacities over a period of time, thus serving to establish a longitudinal picture of the individual's status" and specifically refers to rehabilitation counselors. SSR 03-2P, 2003 WL 22399117, at *7 (S.S.A. Oct. 20, 2003). However, the record suggests that Bitton only saw Plaintiff once for a 60-minute examination. There is no evidence in the record showing that Bitton and Plaintiff shared the type of longitudinal relationship contemplated by SSR 03-2P.

physician for pain management. Specifically, Plaintiff objects to
the ALJ's statement that he gave "little weight" to Dr. Jalali's
physical capacity assessment.

Plaintiff construes the ALJ's decision as rejecting Dr.
Jalali's opinion in its entirety. This is not the case. Instead, the
ALJ's statement regarding the weight given to Dr. Jalali's opinion
pertains only to his April 29, 2011 assessment finding that Plaintiff
was unable to lift or carry any amount, sit for a total of 15 minutes
in an eight-hour workday, stand/walk for a total of 15 minutes in
an eight-hour workday, and that she could never climb, balance,
stoop, crouch, kneel or crawl. After noting that Dr. Jalali based
his assessment on the occupational therapy exam conducted by Bitton
on April 14, 2011, the ALJ stated, "I give little weight to Dr.
Jalali's assessment as he just 'parroted' the opinion of Ms. Bitton
and made his assessment without sufficient additional objective
findings, i.e., the x-ray reports." (R. at 28.)

The regulations provide that the ALJ may reject the opinion of
a treating physician when it is not supported by medically acceptable
clinical or diagnostic techniques or inconsistent with other
substantial evidence regardless of the treatment relationship. See
20 C.F.R. § 404.1527(d)(2)-(3); see also Salles v. Comm'r of Soc.
Sec., 229 F. App'x 140, 149 (3d Cir. 2007) ("Because the consultative
physician's observations were more consistent with the weight of the

17

evidence, the ALJ properly afforded them greater weight than the opinion of the treating physician."). Here, the ALJ explained that he rejected Dr. Jalali's April 29, 2011 assessment of Plaintiff's function because it was based exclusively on Bitton's assessment, not independent findings, observations, or clinical techniques. Further, as discussed above, it is clear that the ALJ found Bitton's assessment to be inconsistent with other substantial evidence in the record. See SSR 96-2P, 1996 WL 374188, at * 3 (S.S.A. July 2, 1996) ("Sometimes, there will be an obvious inconsistency between the opinion and the other substantial evidence; for example, . . . when two medical sources provide inconsistent medical opinions about the same issue."). Therefore, the ALJ did not err in assigning Dr. Jalali's assessment lesser weight than the state consultative physicians.

Additionally, Plaintiff argues that the ALJ erred in stating that Dr. Jalali's assessment was not supported by sufficient objective findings. Plaintiff relies on SSR 03-2P and Maiorano v. Barnhart, 105 F. App'x 374 (3d Cir. 2004) for the proposition that RSD often defies diagnostic testing. In Maiorano, the Third Circuit found that the ALJ erred in discounting without adequate explanation the uncontradicted opinions of the claimant's two treating physicians. Maiorano, 105 F. App'x at 378. The court noted that each of the two non-examining consultants, whose opinions the ALJ afforded

greater weight, failed to address the claimant's diagnosis of RSD and preceded a surgery after which the claimant's right arm remained impaired. Id. As additional support for finding error, the Maiorano court stated that negative reports on diagnostic tests, including a MRI, are not definitive for diagnosing RSD and merely confirm the absence of other causes of the claimant's pain. Id. Here, Dr. Khona's report is distinguishable because it records diagnoses of RSD and chronic pain in the right knee. Dr. Khona also recognized that Plaintiff was limited for sitting and standing for a prolonged time.

Indeed, the ALJ did not question the diagnosis of RSD and the ALJ accepted Plaintiff's RSD and chronic pain of the lumbar spine as severe impairments at the step two analysis. (R. at 25.) Likewise, the ALJ found at step four that due to these impairments, Plaintiff could not perform her past relevant work as a cook. (R. at 30.) The ALJ found, however, that Plaintiff's RSD and chronic back pain were not of a severity rising to the level of a disabling condition in light of Plaintiff's residual functional capacity. To the extent Plaintiff argues that RSD is per se a disabling condition, that argument was sufficiently addressed by the ALJ.

Although diagnostic testing such as MRIs and x-rays are not definitive for diagnosing RSD and no specific test is listed in the diagnostic criteria for RSD, it was not error for the ALJ to note the absence of objective findings. SSR 03-2P refers to SSR 96-2P

without qualification. See SSR 03-2P, at *5 (S.S.A. Oct. 20, 2003)

("If we find that a treating source's medical opinion on the issue

of the nature and severity of an individual's impairment(s) is

well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other

substantial evidence in the case record, the adjudicator will give

it controlling weight."). Accordingly, it was proper for the ALJ to

emphasize that Dr. Jalali provided no independent, medically

acceptable support for his assessment of Plaintiff's capacity to

perform gainful employment. Therefore, the Court finds that the ALJ

provided an adequate explanation for rejecting Dr. Jalali's

assessment.

### 3. Plaintiff's Credibility

Plaintiff argues that the ALJ did not properly consider

Plaintiff's subjective complaints of pain and other symptoms under

SSR 96-7P. Plaintiff contends that the ALJ failed to properly analyze

the factors set forth in SSR 96-7P, including Plaintiff's

longitudinal record of treatment and work history, and that the ALJ

mischaracterized Plaintiff's treatment records and statements made

in her Function Report.

SSR 96-7p requires the ALJ to make credibility determinations

grounded in the evidence and in light of the entire case record. SSR

96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996). The ALJ cannot

simply state that the "allegations have been considered" or that they categorically are not credible. Id. at *2. "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Id.

Here, the ALJ's written decision is sufficiently specific to make clear what weight he gave Plaintiff's statements and the corresponding reasons. The ALJ discussed in three detailed paragraphs Plaintiff's testimony in light of other evidence in the record, including Dr. Jalali's treatment notes and Dr. Khona's assessment. See Martin v. Comm'r of Soc. Sec., Civ. 13-2150, 2013 WL 6501335, at *5 (3d Cir. Dec. 12, 2013) (upholding the ALJ's credibility determination when the ALJ (1) stated the claimant's testimony was not credible because it did not comport with the weight of the evidence in the file and (2) described the contrary evidence). In particular, the ALJ noted that Plaintiff claimed to lose concentration, but Dr. Jalali's notes consistently indicate the absence of cognitive limitations. Plaintiff testified that she could only stand for ten minutes, walk half a block and stand for five minutes, but stated in her Function Report that she cared for her two children, did basic cleaning, shopped once per month for thirty minutes, and could lift

21

about twenty pounds. The ALJ found that Dr. Jalali's treatment notes show that Plaintiff's medications provided adequate pain relief and indicate that Plaintiff had the capacity for light work. The ALJ also discussed Dr. Khona's observations that Plaintiff had normal gait and station and needed no help changing or getting on and off the examination table.

Moreover, the Court finds that the ALJ considered Plaintiff's longitudinal record of treatment and history of pain because he acknowledged Plaintiff's treatment for severe RSD since 2001 and relief from pain in treatment notes from Dr. Jalali as far back as 2004. Further, the ALJ did not mischaracterize Plaintiff's daily living activities, as recorded in the Function Report. While Plaintiff reported needing assistance with childcare, she stated in the Function Report that she fed, changed, and played with her children, as noted by the ALJ. The ALJ acknowledged Plaintiff's limitations by stating that Plaintiff could prepare "simple easy meals" and "basic cleaning." (R. at 29.)

Unlike Frankenfield, where the Third Circuit found remand appropriate because the ALJ relied on daily activities to reject the treating physician's uncontradicted medical opinion, in the present case the ALJ merely relied on Plaintiff's reports of daily activities to contradict conflicting testimony regarding her limitations. See Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988) ("What we

are left with is a rejection of medically credited symptomatology based solely on the administrative law judge's observation of the claimant at the hearing, and claimant's testimony that he took care of his personal needs, performed limited household chores, and occasionally went to church. That is not permissible.").

Plaintiff's argument that the ALJ failed to consider her work history is also without merit. First, the ALJ did consider Plaintiff's work history by acknowledging her past relevant work as a cook. See Gardner v. Astrue, Civ. 12-193, 2013 WL 1207987, at *11 (M.D. Pa. Mar. 25, 2013). Second, work history is only one of many factors the ALJ may consider in assessing claimant's credibility. 20 C.F.R. § 404.1529(c). Work history is not dispositive of credibility and the question of credibility is left to the ALJ's discretion after considering all of the relevant factors. Thompson v. Astrue, Civ. 09-519, 2010 WL 3661530, at *4 (W.D. Pa. Sept. 20, 2010) ("[A] claimant's work history alone is not dispositive of the question of his credibility, and an ALJ is not required to equate a long work history with enhanced credibility.").

Finally, the Court is unpersuaded by Plaintiff's recounting of evidence not discussed by the ALJ. It is settled that the ALJ need not "make reference to every relevant treatment note in a case." Fargnoli, 247 F.3d at 42. Further, the ALJ here sufficiently addressed evidence in conflict with his findings by discussing

Plaintiff's reports of increased pain in Dr. Jalali's notes, as well as the assessments of Lisa Bitton and Dr. Jalali regarding Plaintiff's functional capacity. See Landeta v. Comm'r of Soc. Sec., 191 Fed. App'x 105, 110 (3d Cir. 2006). Therefore, the Court finds that the ALJ adequately explained the weight given to Plaintiff's subjective testimony and his explanation is supported by substantial evidence.

## B. Step Five Analysis

Plaintiff argues that the ALJ also erred at step five of sequential analysis. However, Plaintiff only identifies these arguments in the "issues presented" and "summary of argument" sections of her brief and fails to provide additional analysis.[6] Because arguments "raised in passing . . . but not squarely argued, are considered waived," John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp., 119 F.3d 1070, 1076 n.6 (3d Cir. 1997), the Court will only briefly address Plaintiff's arguments regarding step five.

Plaintiff contends that the ALJ's hypothetical question failed to include all of Plaintiff's impairments supported by the record. The "ALJ's hypothetical must include all of a claimant's impairments." Ramirez v. Barnhart, 372 F.3d 546, 552 (3d Cir. 2004).

---

[6] Plaintiff's Rule 9.1 statement contains two paragraphs addressing the argument that "the ALJ's hypothetical question to the VE is not substantial evidence to support that Plaintiff can perform other work as exists in the national economy." (Pl. 9.1 Statement [Docket Item 9] at 6.)

However, the ALJ is not required to "submit to the vocational expert every impairment *alleged* by a claimant." Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005) (emphasis in original). Instead, "the ALJ must accurately convey to the vocational expert all of a claimant's *credibly established limitations.*" Id. (emphasis in original). Here, the ALJ's hypothetical contemplated an individual with Plaintiff's age, education, and work experience who could only lift and carry up to ten pounds occasionally and less than ten pounds frequently. (R. at 29.) The ALJ noted an additional limitation that the individual be able to stand or sit at will to alleviate pain. (Id.) The Court finds that the ALJ's hypothetical properly identified all of Plaintiff's impairments supported by the record and credited by the ALJ, as discussed above, including the option to sit or stand at will.

Plaintiff also argues that the ALJ improperly relied on the VE's professional opinion in discussing the impact of the sit/stand option on the availability of jobs in the national economy. In reaching his conclusions, the VE reduced the number of available jobs by one half to account for the sit/stand option. (R. at 60-63.) To the extent there was a conflict between the VE's testimony and the DOT, it was resolved to the ALJ's satisfaction because the VE's testimony for each job acknowledged, based on his experience, the need to erode the number of positions available based on the sit/stand option. See

SSR 00-4P, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000) ("Information about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a VE's or VS's experience in job placement or career counseling."); Minichino v. Colvin, Civ. 12-625, 2013 WL 3287142, at *13 (M.D. Pa. June 28, 2013) (relying on vocational expert's experience in job placement to determine impact of sit/stand option on availability of jobs in the national economy); Marta v. Astrue, Civ. 09-601 (ER), 2010 WL 2196553, at *8-9 (D. Del. June 2, 2010) (same).

Finally, Plaintiff argues that the VE's definition of "reaching" conflicts with the DOT. In response to the ALJ's question regarding additional postural limitations, the VE explained that Plaintiff's limitations in reaching would not affect the jobs identified. The VE explained that "[r]eaching is actually extending versus these positions are basically where you are actually doing reaching from your chest level to desk level." (R. at 65.) Because Plaintiff has not identified any support for her argument that the VE's definition of reaching conflicts with the DOT, the Court finds no error. Even if there were error in failing to address a conflict, the failure of the ALJ to explain a conflict does not require reversal because the ALJ's step five analysis is otherwise supported by substantial evidence. Jones v. Barnhart, 364 F.3d 501, 506 (3d Cir.

2004) (finding that inconsistencies between vocational expert testimony and DOT "did not cause an ALJ determination at step 5 to be devoid of substantial evidence" where such inconsistencies did not exist as to all of the jobs identified by the vocational expert). Therefore, the Court finds no error at step five.

## V. Conclusion

For the foregoing reasons, the Court finds that substantial evidence in the record supports the ALJ's determination regarding Plaintiff's RFC and that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. The Court also finds that the ALJ provided an adequate explanation for his decision and his treatment of the evidence in the record. Therefore, the Court will affirm the Commissioner's final decision that Plaintiff was not disabled as of December 1, 2007. An accompanying Order will be entered.


**January 23, 2014**                          **s/ Jerome B. Simandle**
Date                                          JEROME B. SIMANDLE
                                              Chief U.S. District Judge


27